The judgment-of the court (Rost, J. having recused himself) was pronounced by
King, J.
The plaintiff claims in this action the price paid by him for a female slave, who, he alleges, was affected, at the time he purchased her, with a redhibitory disease, of which she subsequently died. The defendant denies that he was aware of the existence of any infirmity at the date of the sale, but that to avoid subsequent controversy upon this point he refused to warrant the slave's health. There was a judgment in favor of the defendant in the court below, and the plaintiff has appealed.
Both parties acted through their agents. The act of sale to the plaintiff, after warranting the title to the slave, proceeds thus: “ The girl is now and has been, so far as known to me, of good health, and also her parents before her; but the said While takes her and runs the risk of her health.”
A few days after the sale the slave sickened, lingered for some time, and finally died of pulmonary consumption — -a disease which the evidence leaves no doubt she laboured under when the plaintiff purchased her.
The plaintiff contends, that the clause in relation to the health of the slave is a warranty of her soundness at the time of the sale. That the qualifying expressions, “ so far as known to me,” relate exclusively to her past health, and to the health of her parents; but that the affirmance that she is now in good health, is positive and unqualified; and concludes that the purchaser took the risk of the future health of the slave, on the positive assurance that she was then in good health. This reading converts the clause into one of full warranty, leaving no risk to be run by the plaintiff other than the law would impose, in the absence of the stipulation, although he expressly assumed the entire risk of her health.
The reasoning of the plaintiff’s counsel, which is based mainly upon the gramatical construction of the sentence, has not satisfied us that this interpretation is in accordance with the intentions of the parties.
The extent to which the vendor intended to warrant, is stated in the first clause, in which he guarantees the title to the girl, and that she is a slave for life. The subsequent clause can only be understood as a declaration that the vendor was ignorant of the existence of any disease at that time, or that the health of the slave had been previously bad. The effect of the declaration is this : if it should be proved that the vendor knew that the slave was unsound, or had not previously enjoyed good health, then he would be bound, by reason of his misrepresentation; but otherwise, the risk would be on the purchaser, and there would be no warranty of soundness.
*30 It 'is said by the plaintiff’s counsel, that “ the construction of the defendant’s agents, contemporaneous with the execution of the instrument, is certainly the best proof of the intention of the parties, and ought to be adopted in case of doubt.”
If we are to consider this as a waiver of his bills of exception, taken on the trial below, to the introduction'in evidence of the conversations of the parties pending the negotiation for the purchase, in order to construe the clause, that evidence accounts satisfactorily for its insertion in its present form ; and to our minds, shows conclusively that the defendant did not intend to warrant the slave’s health. We do not, however, deem it necessary to consider the -parol testimony in this connection. Our conclusions are derived from the instrument itself. It devolved then, upon the plaintiff to shew that the slave was diseased when sold, and that this was known to the defendant or his agent who failed to disclose it. That the defendant’s agent suspected the unsoundness of the slave, we think results from the testimony ; and it remains to enquire whether he communicated his suspicions to the plaintiff.
Much of the testimony taken on the trial of the cause details conversations between the parties prior to the sale, and was objected to on the ground that it went beyond what was contained in the written act, and violated the art. 2256 of the code. We have not considered it admissible under the pleadings in this case to aid in construing the clause relating to warranty; but it is admissible, under the article 2498, to prove the declarations made by the seller to the purchaser, before or at the time of the sale, in relation to latent defects. That testimony shows declarations of the vendors agent, which, when taken in connexion with other circumstances disclosed, must be considered as equivalent to,a notice of the suspicions which the-agent entertained in relation to the slave’s health.
It is shown that- the slave was extremely delicate in her appearance ; was small for her years ; and had at the time the plaintiff’s agent applied to purchase her, a bad cough, of which he was informed. The defendant offered the slave for six hundred dollars, without warranty; but, as she laboured under a bad cold, he asked $800, if required to warrant her health. This was certainly a notice to the plaintiff that although the vendor was ignorant of any fixed disease, and could declare no infirmity save a bad cold, still he considered her of frail constitution, and not of a description to be warranted in respect to health, without a large premium. The admonition was not lost upon Payne, the plaintiff’s agent. He required time to deliberate, took the slave away, avowedly for the purpose of causing her to be examined by a physician, and finally, after the expiration of three days, accepted a sale, with the clause already stated.
The evidence affords no ground for believing that the defendant possessed any information touching the slave’s health which was withheld. She had but recently arrived from Baltimore; had been in the possession of the agent but a few days, and had not been examined by a physician. The suspicions which the agent entertained arose from her appearance and from the cough under which' she labored; and these suspicions were, as we think, communicated by the circumstances to which we have adverted.
Judgment affirmed, with costs.